**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

SARAH LEMASTER LIVERS,
*Administratrix of the Estate of* James
Lemaster,

     **Plaintiff,**

**V.**

STROHWIG INDUSTRIES, INC. and
AMERICAN DRILL BUSHING LLC,

     **Defendants.**

**CIVIL ACTION NO. 5:22-cv-211-KKC**

**OPINION AND ORDER**

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on the motion for summary judgment (DE 73) filed

by defendant American Drill Bushing, LLC. This case arises from the tragic August 12,

2021 death of James Lemaster, who was killed when a mold fixture fell on him while he

was operating a hoist crane to lift the fixture at Orbis Corporation in Georgetown,

Kentucky.

Defendants are entitled to summary judgment if, under the undisputed facts and the

plaintiff's version of any material disputed facts, defendants are entitled to judgment as a

matter of law. Fed. R. Civ. P. 56(a); *Davenport v. Causey*, 521 F.3d 544, 546 (6th Cir. 2008);

*Rimco, Inc. v. Dual-Tech, Inc.*, No. 3:21-CV-313, 2022 WL 4545608, at \*1, n.1 (E.D. Tenn.

Sept. 28, 2022) ("As required, this Court accepts undisputed facts as true. In deciding a

motion for summary judgment as to which the parties dispute any material facts, the Court

must view the disputed evidence in the light most favorable to the party responding to the

motion—here, Plaintiff—and draw all reasonable inferences in that party's favor.")

Accordingly, for purposes of this motion, the Court has considered the material facts that the parties agree to and has considered Plaintiff's version of any material facts that the parties dispute. The relevant question on this motion is whether there is sufficient evidence from which any rational juror could find that American Drill manufactured the swivel hoist ring that failed and whether there is sufficient evidence that the swivel hoist ring failed because it was defective. *Provience v. City of Detroit*, 529 F. App'x 661, 668 (6th Cir. 2013); *Baker v. Stevenson*, 605 F. App'x 514, 520 n.4 (6th Cir. 2015).

### I.    Facts

At the time of the indictment, James Lemaster was working at Orbis Corporation. Orbis is a structural foam manufacturer. The Orbis facility is 150,000 square feet. Inside the facility are large cranes that are used to move fixtures and molds around the facility.

Lemaster and coworker Dylan Martin were operating a crane to lift and move a large mold encased within a mold fixture. The crane was attached to the mold fixture with a swivel hoist ring. While the fixture was suspended about 20 feet above ground, the fixture suddenly fell on Lemaster, killing him on impact.

The mold fixture was manufactured by Strohwig. It is made up of various component parts; the Bill of Materials for the project identifies 14 pages of them. Among the component parts were 18 hoist rings of four different models manufactured by American Drill. (DE 70-3 Bill of Materials 7.)

A distributor called ApTex Tooling ordered hoist rings from American Drill on May 10, 2021 and requested that they be shipped to Strohwig, which was done on May 30, 2021. Strohwig manufactured the lifting blocks for the fixture. It installed the American Drill swivel hoist rings onto the lifting blocks. It then sent the lifting blocks to Wisconsin Lifting in May 2021 to ensure that the blocks and hoist rings met industry standards and to ensure

there were no design defects or risk of tensile failure. (DE 73-2 Green Dep. 42-43, 57.) The lifting blocks and hoist rings passed inspection and were determined to meet industry standards. (DE 73-2 Green Dep. 42.)

Strohwig shipped the fixture and mold to Orbis in June 2021. Strohwig Project Manager Scott Biertzer also traveled to the Orbis facility to facilitate training and installation of the new mold and fixture.

After the incident, members of the local sheriff's department arrived at the scene and placed some items in a brown evidence bag. A day after the incident, OSHA obtained the brown evidence bag from the sheriff's department. The bag contained five items: a chrome ball, a U-bar or shackle, two bolts, and a yellow tag. These five items are the only component parts of the fixture that the parties discuss in their briefs on this motion. They are the only component parts evaluated by OSHA. After the accident, Orbis shipped the fixture back to Strohwig for repairs. Strohwig Project Manager Biertzer testified that, after the repairs, Strohwig did not save any of the fixture's other damaged parts. (DE 73-4 Biertzer Dep. 73.)

OSHA evaluated the five items and concluded that the U-bar "was deformed consistent with tensile failure" and both bolts were broken and "the nature of the fractures was tensile failure." The chrome ball was 'unremarkable." The yellow tag was associated with a part number 23106 and bore a "Certificate of Proof Load Test," which stated that the rated load for the associated product was 10,000 pounds and that the product was "proof loaded" to 20,000 pounds. (DE 29-1 OSHA Report 1-3.)

Tensile failure "is evidence that the metal failed by being stressed by a force greater than the strength of the material." (DE 29-2 OSHA Report 3.) OSHA determined that

"[e]xamination of the [U-bar] and bolts show that failure was consistent with an applied stress greater than the strength of the steel." (DE 29-2 OSHA Report 3.)

OSHA was unable to determine, however, what caused the fixture to fall. Its closing report states, "Through the inspection [OSHA was] unable to determine the cause of the lifting fixture's failure. Metallurgical testing didn't reveal evidence that conclusively determine[d] the cause of the failure nor did employee interviews reveal the cause. Finally, no video or photographic evidence exists that would show the cause of the failure." (DE 70-7 Closing Report 8.) OSHA Safety Compliance Officer Larry Reardon testified that OSHA could not determine the cause of the accident and that he would not offer any opinion in this litigation as to what caused the fixture to fall. (DE 73-16 Reardon Dep. 13, 64, 65.)

The yellow tag was picked up off the bottom of the fixture and placed in the evidence bag. American Drill Vice President and General Manager Benjie Bradshaw testified that the yellow tag is associated with an American Drill swivel hoist ring part number 23106. (DE 73-6 Bradshaw Dep. 14-15.) American Drill proof loads every hoist ring, including all part number 23106 hoist rings, to 200 percent of its "rated load," which is its working load limit. (DE 73-8 Bradshaw Aff. ¶ 8.) Each swivel hoist ring has a label containing a Certificate of Proof Load Test. (*Id.*) The yellow tag in the evidence bag stated that the rated load for part number 23106 was 10,000 pounds and that the part was proof loaded to 20,000 pounds. (DE 29-1 OSHA Report 3.) This means that the hoist ring was tested by loading it with a weight equal to 200 percent of the rated load. (DE 73-8 Bradshaw Aff. ¶ 9.) Martin, who was working with Lemaster at the time of the accident, testified that he thought the mold fixture weighed 8,000 pounds maximum. (DE 32-2 Martin Dep. 19.)

A U-bar is a component of an American Drill swivel hoist ring. (DE 73-8 Bradshaw Aff. ¶¶ 13, 16.) Before selling the swivel hoist ring identified on the yellow tag, American

4

Drill would have placed it in a sealed plastic bag with the yellow tag affixed to the U-bar with a zip tie. (DE 73-8 Bradshaw Aff. ¶ 16.) The U-bar in the evidence bag could be part of an American Drill number 23106 swivel hoist ring, but it could also be part of other products manufactured by American Drill or by other manufacturers. (DE 73-8 Bradshaw Aff. ¶ 13; DE 68-4 American Drill Answer to Interrog. No. 1.) Neither the two bolts nor the chrome ball would be part of a number 23016 swivel hoist ring. Neither part is manufactured by American Drill. (DE 68-4 American Drill Answer to Interrog. No. 1.)

In its response to the motion for summary judgment, Plaintiff clarifies that it asserts only a claim that the American Drill hoist ring failed due to a manufacturing defect. (DE 78 Resp. 2.) Thus, though the complaint mentions other concepts like "gross negligence," "failure to warn" and "breach of warranty," the Court construes the complaint to assert claims against American Drill only for negligence and strict liability based on an alleged manufacturing defect in the swivel hoist ring. American Drill now moves for summary judgment in its favor on both claims.

Plaintiff's theory regarding American Drill's liability for the accident is found in the report of its expert Paul Sweeney, a mechanical engineer. Sweeney opines that the swivel hoist ring that attached the lifting fixture to the crane was defective and that it was manufactured by American Drill. (DE 59-1 Sweeney Report §§ 1, 7.)

## II.    Analysis

There is sufficient evidence from which a rational juror could conclude that the swivel hoist ring that connected the fixture to the crane was manufactured by American Drill.

Strohwig bought six American Drill number 23106 swivel hoist rings prior to shipping the mold fixture to Orbis. Strohwig shipped the mold fixture to Orbis on June 17,

5

2021. On or about May 12, 2021, Strohwig purchased six hoist rings from ApTex, which ordered the six swivel hoist rings from American Drill on May 10, 2021 and requested they be shipped to Strohwig. American Drill shipped the hoist rings to Strohwig on May 31, 2021. Strohwig then installed the American Drill hoist rings on the mold fixture and shipped the fixture to Orbis on June 17, 2021. Bradshaw of American Drill testified that he learned through discovery that ten or more American Drill hoist rings were used in the design and manufacture of the mold fixture. (DE 73-6 Bradshaw Dep. 14.) American Drill has pointed to no evidence that any swivel hoist ring on the mold fixture was manufactured by any entity other than American Drill.

Most importantly, in discovery responses, Strohwig stated, "The u-bolts used to connect the crane to the lifting rig were manufactured by American Drill Bushing, LLC." (DE78-1 Answer to Interrog. No. 3.)

This is sufficient evidence from which a rational juror could conclude that hoist ring that hooked the mold fixture to the crane was manufactured by American Drill.

But a jury could not find American Drill liable for Lemaster's death on either a negligence or strict liability theory based solely on evidence that American Drill manufactured the hoist ring that hooked the mold fixture to the crane. Plaintiff must also point to evidence from which a jury could conclude that the hoist ring that connected the mold fixture to the crane was defective and that its defect caused the mold fixture to fall. *Tipton v. Michelin Tire Co.*, 101 F.3d 1145, 1150 (6th Cir. 1996); *Morales v. Am. Honda Motor Co., Inc.*, 71 F.3d 531, 537 (6th Cir. 1995); *Leslie v. Cincinnati Sub-Zero Prods., Inc.*, 961 S.W.2d 799, 803-04 (Ky. App 1988); *Holbrook v. Rose*, 458 S.W.2d 155, 157 (Ky. App. 1970).

An initial problem is that the swivel hoist ring that connected the crane to the lifting fixture has not been evaluated. In fact, no swivel hoist ring installed on the lifting fixture has been evaluated. Part of a swivel hoist ring (the U-bar) collected from the accident scene was placed in the evidence bag and evaluated by OSHA, but there is no evidence that this U-bar was part of the hoist ring that connected the crane to the molding fixture. Eighteen swivel hoist rings were installed on the molding fixture. A jury could conclude that the U-bar in the evidence bag was part of one of these 18 swivel hoist rings. There is no evidence, however, from which a juror could reasonably infer that the U-bar in the evidence bag was part of the particular swivel hoist ring that connected the molding fixture to the crane.

In its response to American Drill's motion for summary judgment, Plaintiff points to the OSHA report and the report of its expert Sweeney as evidence that the American Drill swivel hoist ring that connected the lifting fixture to the crane was defective.

As to the OSHA report, as discussed, there is no evidence that the U-bar tested by OSHA was even part of the swivel hoist ring that connected the crane to molding fixture. There is no evidence as to where the swivel hoist ring associated with the U-bar was located on the fixture. Moreover, even as to the U-bar tested, the OSHA Report concluded only that it was "deformed consistent with tensile failure." (DE 29-1 OSHA Report 1.) It explained that tensile failure means only, however, that "the metal failed by being stressed by a force greater than the strength of the material." (DE 29-1 OSHA Report 3.) OSHA determined that "[e]xamination of the shackle and bolts show that failure was consistent with an applied stress greater than the strength of the steel." (DE 29-1 OSHA Report 3.)

The finding of tensile failure does not equate to a finding of a defect in the swivel hoist ring. American Drill's Bradshaw explains in an affidavit that tensile failure can occur for reasons other than a defect in the product including the weight of the load being lifted

7

exceeding the working load limit of the component, the component being exposed to extreme temperatures, or the load getting stuck or catching on another object. (DE 73-8 Bradshaw Aff. ¶ 23.) It is true that American Drill has pointed to no evidence indicating that the weight of the load being lifted exceeded the working load limit of the swivel hoist ring, that that the swivel hoist ring was exposed to extreme temperatures, or that the load got stuck or caught on another object. But neither has Plaintiff pointed to evidence of any defect in the swivel hoist ring. Plaintiff is the party with the burden of proof, and she has pointed to no evidence as to why the swivel hoist ring failed.

OSHA explicitly stated in its closing report that it was unable to determine what caused the fixture to fall. Its closing report states, "Through the inspection [OSHA] was unable to determine the cause of the lifting fixture's failure. Metallurgical testing didn't reveal evidence that conclusively determine[d] the cause of the failure nor did employee interviews reveal the cause. Finally, no video or photographic evidence exist[s] that would show the cause of the failure." (DE 70-7 OSHA Report 8.)

Plaintiff's expert Sweeney does opine that the swivel hoist ring used to attach the lifting fixture to the crane failed and was defective and dangerous. (DE 59-1 Sweeney Report § 7.) But his opinion is based on OSHA's evaluation of the U-bar in the evidence bag. Because there is no evidence that the U-bar in the evidence bag was part of the swivel hoist ring that connected the molding fixture to the crane, a juror could not fairly infer from Sweeney's opinion that the swivel hoist ring at issue was defective.

Further, Sweeney concludes that the swivel hoist ring was defective only because there is no evidence that the weight of the lifting fixture was greater than the swivel hoist ring's lifting capacity or that the lifting fixture got caught on something. He opines that, absent such evidence, the only explanation for the failure is a defect in the swivel hoist

8

ring. Plaintiff makes this same argument in her reply brief stating the swivel hoist ring must have been defective because "[t]here is just no other answer." (DE 78 Response 17.) As explained above, however, there is no evidence of any reason for the tensile failure, including any defect in the U-bar. In fact, the evidence shows that Wisconsin Lifting determined that the swivel hoist rings shipped to Strohwig met industry standards and had no design defects, and American Drill has produced documents indicating that it complies with industry standards in the manufacture, design, and testing of its swivel hoist rings. (DE 73-8 Bradshaw Aff. ¶¶ 19-22.)

It is Plaintiff's burden to produce evidence that the reason for the tensile failure was a defect in the U-bar or swivel hoist ring. Without any evidence of such a defect, a juror could not conclude that any such defect exists.

Moreover, Sweeney concludes only that the swivel hoist ring that attached the lifting fixture to the crane must have been defective. He does not opine as to what the defect was. In a products liability case, it is the plaintiff's burden to present evidence of an "identifiable, unreasonably dangerous defect." *Dalton v. Animas Corp.*, 913 F.Supp.2d 370, 373 (W.D. Ky. 2012). "[E]vidence that merely surmises or speculates as to a defect is not sufficient." *Id.*

A juror could not fairly infer that the swivel hoist ring that connected the crane to the lifting fixture was defective without any evidence that identifies an unreasonably dangerous defect in the product. To prove a manufacturing defect, a plaintiff must show that the product left "the hands of the manufacturer in a defective condition because it was not manufactured or assembled in accordance with its specifications." *Greene v. B.F. Goodrich Avionics, Sys., Inc.*, 409 F.3d 784, 788 (6th Cir. 2005).

A juror could not fairly infer that the swivel hoist ring that connected the crane to the lifting fixture was defective without any evidence that the hoist ring was defective when American Drill shipped it nor any evidence that the ring was not manufactured or assembled in accordance with its specifications. Plaintiff has presented no evidence identifying a defect in the swivel hoist ring; no evidence regarding the standard manufacturing or assembling process or that American Drill's processes deviated from the standard; no evidence regarding the applicable specifications or that the swivel hoist ring deviated from them; and no evidence regarding the condition of the swivel hoist ring when American Drill shipped it.

### III.    Conclusion

For all these reasons, the Court hereby ORDERS as follows:

1) American Drill's motion for summary judgment (DE 73) is GRANTED;

2) American Drill's motion to exclude the testimony of Plaintiff's expert Paul Sweeney (DE 71) is DENIED as moot;

3) American Drill's motion to strike (DE 82) Plaintiff's Notice of Filing (DE 81) is DENIED as moot, the filing not having been material to the Court's resolution of the motion for summary judgment; and

4) Judgment will be entered consistent with this opinion.

January 21, 2025



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY