**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

| | |
|---|---|
| **SARAH LEMASTER LIVERS,** *Administratrix of the Estate of* **James Lemaster,**<br><br>    **Plaintiff,**<br><br>V.<br><br>**STROHWIG INDUSTRIES, INC. and AMERICAN DRILL BUSHING LLC,**<br><br>    **Defendants.** | **CIVIL ACTION NO. 5:22-cv-211-KKC**<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the Plaintiff's motion (DE 96) to alter, amend, or vacate this Court's January 21, 2025 opinion (DE 94) granting summary judgment to defendant American Drill Bushing LLC.

This case arises from the tragic August 12, 2021 death of James Lemaster, who was killed when a mold fixture fell on him while he was operating a hoist crane to lift the fixture at Orbis Corporation in Georgetown, Kentucky. The Court's January 21, 2025 opinion set forth the facts of this matter in detail. The Court will repeat only some of those facts here.

At the time of the incident, James Lemaster was working at Orbis Corporation. Lemaster and coworker Dylan Martin were operating a crane to lift and move a large mold encased within a mold fixture. The crane was attached to the mold fixture with a swivel hoist ring. While the fixture was suspended about 20 feet above ground, the fixture suddenly fell on Lemaster, killing him on impact.

The mold fixture was manufactured by defendant Strohwig Industries, Inc. The mold fixture is made up of various component parts; the Bill of Materials for the project identifies 14 pages of them. Among the component parts were 18 hoist rings of four different models manufactured by American Drill. (DE 70-3 Bill of Materials 7.)

After the incident, members of the local sheriff's department arrived at the scene and placed some items in a brown evidence bag. A day after the incident, OSHA obtained the brown evidence bag from the sheriff's department. The bag contained five items: a chrome ball, a U-bar or shackle, two bolts, and a yellow tag. These five items are the only component parts of the fixture that the parties discuss in their briefs. They are the only component parts evaluated by OSHA. After the accident, Orbis shipped the fixture back to Strohwig for repairs. Strohwig Project Manager Scott Biertzer testified that, after the repairs, Strohwig did not save any of the fixture's other damaged parts. (DE 73-4 Biertzer Dep. 73.) Martin was the only person who witnessed the accident. Thus, evidence about what caused it is limited.

OSHA evaluated the five items and concluded that the U-bar "was deformed consistent with tensile failure" and that both bolts were broken and "the nature of the fractures was tensile failure." The chrome ball was 'unremarkable." The yellow tag was associated with a part number 23106 and bore a "Certificate of Proof Load Test," which stated that the rated load for the associated product was 10,000 pounds and that the product was "proof loaded" to 20,000 pounds. (DE 29-1 OSHA Report 1-3.)

Tensile failure "is evidence that the metal failed by being stressed by a force greater than the strength of the material." (DE 29-2 OSHA Report 3.) OSHA determined that "[e]xamination of the [U-bar] and bolts show that failure was consistent with an applied stress greater than the strength of the steel." (DE 29-2 OSHA Report 3.)

OSHA was unable to determine, however, what caused the fixture to fall. Its closing report states, "Through the inspection [OSHA was] unable to determine the cause of the lifting fixture's failure. Metallurgical testing didn't reveal evidence that conclusively determine[d] the cause of the failure nor did employee interviews reveal the cause. Finally, no video or photographic evidence exists that would show the cause of the failure." (DE 70-7 Closing Report 8.) OSHA Safety Compliance Officer Larry Reardon testified that OSHA could not determine the cause of the accident and that he would not offer any opinion in this litigation as to what caused the fixture to fall. (DE 73-16 Reardon Dep. 13, 64, 65.)

The yellow tag was picked up off the bottom of the fixture and placed in the evidence bag. A photograph after the incident appears to depict a spot for two hoist rings on the bottom of the fixture with one broken. (DE 73-23.) American Drill Vice President and General Manager Benjie Bradshaw testified that the yellow tag is associated with an American Drill swivel hoist ring part number 23106. (DE 73-6 Bradshaw Dep. 14-15.) American Drill proof loads every hoist ring, including all part number 23106 hoist rings, to 200 percent of its "rated load," which is its working load limit. (DE 73-8 Bradshaw Aff. ¶ 8.) Each swivel hoist ring has a label containing a Certificate of Proof Load Test. (*Id*.) The yellow tag in the evidence bag stated that the rated load for part number 23106 was 10,000 pounds and that the part was proof loaded to 20,000 pounds. (DE 29-1 OSHA Report 3.) This means that the hoist ring was tested by loading it with a weight equal to 200 percent of the rated load. (DE 73-8 Bradshaw Aff. ¶ 9.) Martin, who was working with Lemaster at the time of the accident, testified that he thought the mold fixture weighed 8,000 pounds maximum. (DE 32-2 Martin Dep. 19.)

A U-bar is a component of an American Drill swivel hoist ring. (DE 73-8 Bradshaw Aff. ¶¶ 13, 16.) The U-bar in the evidence bag could be part of an American Drill number

3

23106 swivel hoist ring, but it could also be part of other products manufactured by American Drill or by other manufacturers. (DE 73-8 Bradshaw Aff. ¶ 13; DE 68-4 American Drill Answer to Interrog. No. 1.) Neither the two bolts nor the chrome ball would be part of a number 23016 swivel hoist ring. Neither part is manufactured by American Drill. (DE 68-4 American Drill Answer to Interrog. No. 1.)

Plaintiff asserted claims against Strohwig and American Drill. The Court has dismissed the claims against mold fixture manufacturer Strohwig, however, pursuant to a settlement agreement with Plaintiff.

In her response to American Drill's motion for summary judgment, Plaintiff clarified that she asserts only a claim that the American Drill hoist ring failed due to a manufacturing defect. (DE 78 Resp. 2.) Thus, though the complaint mentions other concepts like "gross negligence," "failure to warn" and "breach of warranty," the Court has construed the complaint to assert claims against American Drill only for negligence and strict liability based on an alleged manufacturing defect in the swivel hoist ring.

Plaintiff's theory regarding American Drill's liability for the accident is found in the report of its expert Paul Sweeney, a mechanical engineer. Sweeney opines that the swivel hoist ring that attached the mold fixture to the crane was defective and that it was manufactured by American Drill. (DE 59-1 Sweeney Report §§ 1, 7.)

In its January 21, 2025 opinion, the Court determined that there is sufficient evidence from which a rational juror could conclude that the swivel hoist ring that connected the mold fixture to the crane was manufactured by American Drill. The Court determined, however, that Plaintiff had not pointed to sufficient evidence from which a juror could reasonably conclude that the hoist ring that connected the mold fixture to the crane was defective. For this finding, the Court noted:

4

- Only part of a swivel hoist ring (the U-bar) collected from the accident scene was placed in the evidence bag and evaluated by OSHA.

- There were 18 swivel hoist rings installed on the mold fixture, and Plaintiff pointed to no evidence that the only U-bar collected from the scene was part of the particular hoist ring that connected the mold fixture to the crane.

The Court recognized that Plaintiff's expert Sweeney opines that the swivel hoist ring used to attach the "Strohwig lifting fixture to the crane, failed." (DE 59-1 Sweeney Report § 7.) Sweeney further opined that the swivel hoist ring was defective and dangerous or "was caused to fail by the Strohwig lifting bracket." (Id. at 9.)

In its summary judgment ruling, however, the Court noted that Sweeney's opinion that the swivel hoist ring that connected the mold fixture to the crane failed was based on OSHA's evaluation of the U-bar in the evidence bag. Because there was no evidence that the U-bar in the evidence bag was part of the swivel hoist ring that connected the mold fixture to the crane, the Court found that jurors could not infer from Sweeney's opinion that the swivel hoist ring that attached the mold fixture to the crane was defective.

In this motion to alter, Plaintiff argues that the Court erred in finding that 18 swivel hoist rings were installed on the molding fixture. American Drill asserted in its motion for summary judgment that there were 18 swivel hoist rings. (DE 73-1 Mem. 2; DE 80 Reply 4.) It cited the Bill of Materials, which sets forth 14 pages of parts including 18 swivel hoist rings. (DE 70-3 Bill of Materials 7.) In her response to American Drill's motion for summary judgment, Plaintiff did not contest this.

In this motion to alter, Plaintiff states that there were only three "hooks" on the mold fixture. (DE 96 Motion 2.) She states that Strohwig representative Scott Biertzer testified that the mold fixture needed only three hoist rings. (DE 96 Motion 3.) Biertzer, however, testified only that the mold fixture would have had one hoist ring on top and two on the sides.

5

(DE 73-4 Biertzer Dep. 24.) He explicitly testified, however, that he did not know how many hoist rings were on the mold fixture in total and would only "be guessing on quantity." (DE 73-4 Biertzer Dep. 9-10.) He also explicitly testified that he did not know how many of the hoist rings were used during the job at issue. (DE 73-4 Biertzer Dep. 23, 32.) The images in a sealed exhibit (DE 74) depict the assembly and display some of the multiple swivel hoist rings.

Accordingly, the Court will not alter its finding that 18 swivel hoist rings were installed on the mold fixture.

Plaintiff also appears to argue that the Court erred in finding that Strohwig sent the mold fixture with the swivel hoist rings installed to a company called Wisconsin Lifting for testing. In making that finding, however, the Court cited the testimony of Strohwig Chief Operating Officer Andrew Green, who testified that the molding fixture was tested by Wisconsin Lifting with the hoist rings. (DE 73-2 Green Dep. 42.) He testified that this was done to ensure that the lifting blocks and all the hoist rings met industry standards and that there were no design defects or risk of tensile failure. (DE 73-2 Green Dep. 43, 57.) Green explicitly testified that the mold fixture, including all of the hoist rings, passed all testing performed by Wisconsin Lifting.  (DE 73-2 Green Dep. 57.)

In its motion for summary judgment, Strohwig cited this testimony in support of its assertion that Wisconsin Lifting tested the mold fixture with the swivel hoist rings. (DE 73 Mem. 3.) Plaintiff did not contest that assertion or evidence in its response to Strohwig's motion for summary judgment. In fact, Plaintiff too cited Green's deposition in support of her assertion that a distributor shipped the swivel hoist rings to Strohwig, which then "assembled, tested, and inspected the mold/fixture before shipment" to Orbis. (DE 78 Mem. 9 (citing DE 73-2 Green Dep. 22-23.))

Now, in its Rule 59 motion, Plaintiff points out that Biertzer testified at one point in his deposition that Wisconsin Lifting would not have tested the hoist rings (DE 73-4 Dep. 29.) Plaintiff failed to point this out in its response to the motion for summary judgment. Regardless, Biertzer also testified that Strohwig does send the hoist rings to Wisconsin Lifting, but he was not certain whether Wisconsin Lifting would have tested them (DE 73-4 Biertzer Dep. 56); that Wisconsin Lifting *could not* test the mold fixture *without* the hoist rings; and that Wisconsin Lifting would have to have had the hoist rings to test the molding fixture. (DE 73-4 Biertzer Dep. 52.) Biertzer was uncertain about all this because he is not involved in testing. (DE 73-4 Biertzer Dep. 52.) Accordingly, the Court will not alter its finding that Strohwig sent the mold fixture with the swivel hoist rings installed to Wisconsin Lifting for testing before shipping the fixture to Orbis. This finding was not, however, crucial to the Court's summary judgment ruling.

Plaintiff's central argument in her Rule 59 motion is that the Court should have allowed her case to proceed to a jury under the "malfunction doctrine," which allows a jury in strict liability cases "to infer defectiveness from the negation of other causes." *Hill v. Kia Motors Am., Inc.*, No. 20-5690, 2022 WL 557823, at *9 (6th Cir. Feb. 24, 2022). In its summary judgment ruling, the Court found that Plaintiff must point to evidence that the particular swivel hoist ring that connected the mold fixture to the crane was defective and that its defect caused the mold fixture to fall. Plaintiff does not dispute that she has presented no such evidence. She argues, however, that she does not need to do so under the malfunction doctrine, pursuant to which:

> It may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff:

7

> (a) was of a kind that ordinarily occurs as a result of product defect; and
>
> (b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution.

Restatement (Third) of Torts: Prod. Liab. § 3 (1998). *See also Siegel v. Dynamic Cooking Sys., Inc.*, 501 F. App'x 397, 402–03 (6th Cir. 2012).

The Restatement provides the following illustration:

> Mary purchased a new automobile. She drove the car 1,000 miles without incident. One day she stopped the car at a red light and leaned back to rest until the light changed. Suddenly the seat collapsed backward, causing Mary to hit the accelerator and the car to shoot out into oncoming traffic and collide with another car. Mary suffered harm in the ensuing collision. As a result of the collision, Mary's car was set afire, destroying the seat assembly. The incident resulting in the harm is of a kind that ordinarily occurs as a result of product defect. Mary need not establish whether the seat assembly contained a manufacturing defect or a design defect.

*Id.* illus. 3.

In the illustration, there is no question that the seat back malfunctioned. Likewise, in *Siegel*, there was no question that the plaintiff's oven exploded during ordinary use. Here, if Plaintiff pointed to evidence that the swivel hoist ring that connected the mold fixture to the crane failed and that this resulted in harm that ordinarily occurs because of a defect, then, pursuant to the malfunction doctrine, she would not be required to establish that the ring contained a manufacturing or design defect. The Court has again reviewed Plaintiff's response to American Drill's motion for summary judgment and has also reviewed this motion to alter. Plaintiff has pointed to no evidence that the swivel hoist ring that connected the mold fixture to the crane failed.

In her response to American Drill's motion for summary judgment, she cited a statement in codefendant Strohwig's motion for summary judgment that "ADB's swivel hoist

8

ring failed causing the mold and fixture to fall." (DE 78 Response 2.) In support of that assertion, however, Strohwig cited only the complaint, which is not evidence. (DE 67-1 Mem. 1.) Strohwig also described the "lifting or 'rigging' apparatus" as having "a multitude of complex pieces which require individual assessment" including a lifting bracket and multiple swivel hoist rings. (DE 67-1 Mem. 5.)

In her response to the motion for summary judgment, Plaintiff also cited the report of her expert Sweeney as evidence that the swivel hoist ring that attached the mold fixture to the crane failed. (DE 78 Response 3.) For that conclusion, Sweeney relied on OSHA's evaluation of the U-bar in the evidence bag. He assumes it was associated with the swivel hoist ring that connected the mold fixture to the crane but does not explain why he makes that assumption or cite any supporting evidence. Because Plaintiff has pointed to no evidence that the U-bar in the evidence bag was part of the swivel hoist ring that connected the mold fixture to the crane, a juror could not reasonably infer from Sweeney's report that the swivel hoist ring that connected the mold fixture to the crane failed.

Plaintiff recognizes that coworker Dylan Martin was the only eyewitness to the incident. (DE 96 Mem. 2.) Martin, however, testified that he "didn't see anything break or anything"; he just heard a "loud pop." (DE 73-13 Martin Dep. 18.) He testified that he could see the mold fixture but not the "hook or the attachments or anything." (DE 73-13 Martin Dep. 74.) He testified that he had no first-hand knowledge of how the incident occurred other than guesses or what he had heard from others. (DE 70-6 Martin Dep. 76.) Accordingly, a jury could not infer from his testimony that the swivel hoist ring that connected the mold fixture to the crane failed.

9

OSHA reviewed all the evidence it gathered and was unable to determine the cause of the incident. This Court has reviewed all the evidence cited by the parties to determine if a rational juror could conclude that the accident was caused by the failure of the swivel hoist ring that connected the mold fixture to the crane. For the reasons discussed here and in its summary judgment ruling, the Court finds that Plaintiff has not pointed to sufficient evidence from which a juror could reasonably reach that conclusion. Accordingly, the Court hereby ORDERS that the motion to alter (DE 96) the Court's January 21, 2025 summary judgment ruling is DENIED.

July 9, 2025

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY